## UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ERIKA BROWN on behalf of herself and all others similarly situated,<br>Plaintiff,<br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC.,<br><br>Defendant. | Case No.: __1:18-cv-7585__<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT

Plaintiff Erika Brown individually and on behalf of all others similarly situated, brings this action against Defendant Walgreens Boots Alliance, Inc. ("Walgreens Boots Alliance"). The following allegations are based upon personal knowledge as to Plaintiff's own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

### INTRODUCTION

1.      Walgreens Boots Alliance "is the first global pharmacy-led, health and well-being enterprise."[1] Its "purpose is to help people across the world lead healthier and happier lives."[2]

2.      Walgreens Boots Alliance's principal USA pharmacy retail brands are Walgreens and Duane Reade, which together form "one of the largest drugstore chains in the U.S."[3]

3.      Walgreens Boots Alliance sells a variety of health and wellness products, including over-the-counter-pharmaceuticals at its Walgreens stores.

4.      In addition to selling name brand over-the-counter drugs, Walgreens Boots Alliance (hereinafter "Walgreens") also produces, manufactures, markets, distributes, and sells a

---

[1] http://www.walgreensbootsalliance.com/ (last accessed 11.15.2018).
[2] *Id.*
[3] *Id.*

generic version of certain over-the-counter drugs under the Walgreens brand to families, children, and other consumers, including analgesic or pain-relieving medicines using acetaminophen.

5. In 2005, Johnson & Johnson Consumer Inc. introduced the name brand Tylenol® Extra Strength Rapid Release Gels to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[4] Three years later, Tylenol® PM Rapid Release Gels were launched with the same promises.[5]

6. Walgreens then introduced its own version of the Tylenol® Extra Strength Rapid Release Gels called Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™.



[6]

7. Walgreens also introduced its own version of the Tylenol® Extra Strength PM Rapid Release Gels called Well at Walgreens Extra Strength Pain Reliever PM Fast-Release Quick Gels™.



[7]

---

[4] https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[5] *Id.*
[6]     https://www.walgreens.com/store/c/walgreens-pain-reliever-quick-gels/ID=prod6153224-product (last accessed 11.15.2018).
[7]     https://www.walgreens.com/store/c/walgreens-pain-reliever-pm-gelcaps/ID=prod6191253-product (last accessed 11.15.2018).

8. Since the release of its generic versions of the Tylenol® rapid release gelcaps, Walgreens has misled and continues to mislead consumers about the nature, quality, and effectiveness of its so-called fast-release products through its advertising and labeling.

9. In particular, the Walgreens brand acetaminophen Fast-Release Quick Gels™ ("Class Fast-Release Quick Gels") are marketed as comparable to Tylenol® Extra Strength Rapid Release Gels even though, on information and belief, they do not contain the unique laser drilled holes of Tylenol® Extra Strength Rapid Release Gels. The Walgreens version is nonetheless labeled and advertised as a comparable to the "rapid release" product.

10. Despite what Walgreens' labeling and advertising would have consumers believe, the term "fast-release" or "rapid release" do not actually mean that the drug works faster for consumers than non-fast or non-rapid release products. The same is true of the brand name Tylenol® rapid release products.

11. Walgreens has long known or should have known that traditional, non-fast release acetaminophen products can be equally effective in the same, if not faster, time period than its Walgreens fast-release products.

12. In fact, a new study demonstrates that Walgreens' Fast-Release Quick Gels™ dissolve *slower* than the Walgreens non-fast release products.[8]

13. Yet, Walgreens charges a premium for its Fast-Release Quick Gels™.

14. Walgreens sells its Fast-Release Quick Gels™ with false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these gelcaps for prices that exceed their true value. Walgreens has pursued and continues to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

---

[8] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 11.15.2018).

15.     Plaintiff and Class Members are consumers who were misled or deceived by Walgreens' false, misleading, unfair, and deceiving representations and as a result purchased the Walgreens brand acetaminophen Fast-Release Quick Gels™.

16.     Plaintiff and Class Members would not have purchased the Class Fast-Release Quick Gels had Walgreens disclosed accurate information about the products and not misled them into believing that the Class Fast-Release Quick Gels would provide faster relief than other, cheaper acetaminophen products, such as the traditional Walgreens acetaminophen tablets.

17.     Plaintiff, thus, brings this class action against Walgreens on behalf of herself and on behalf of all individuals who purchased the Class Fast-Release Quick Gels (the "Class") seeking damages and appropriate equitable relief given that Walgreens' conduct violated well-established contract, tort, and consumer protection laws of Illinois and the United States.

## PARTIES

18.     Plaintiff Erika Brown is a citizen and resident of Orland Hills, Cook County, Illinois.

19.     Defendant Walgreens is a Delaware corporation that maintains its headquarters at 108 Wilmot Road, Deerfield, Illinois 60015.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed class is a citizen of a state different from Walgreens; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action. Original jurisdiction is also proper in this matter given Defendant Walgreens' violation of the Magnuson-Moss Warranty Act claim, 15 U.S.C. § 2301, pursuant to 28 U.S.C. § 1331.

21.     This Court can exercise supplemental jurisdiction over the Class' state law claims under 28 U.S.C. § 1367.

22.     This Court can exercise personal jurisdiction over Walgreens because Walgreens is headquartered in Illinois, and it intentionally avails itself of the markets within Illinois through the operation of hundreds of Walgreens stores within the state as well as the promotion, sale, marketing, and distribution of its products.

23.     Venue is proper in this District under 28 U.S.C. § 1391 because Walgreens conducts substantial business in this District and a substantial part of Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### ACETAMINOPHEN GENERALLY

24.     Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[9]

25.     In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[10] chronic pain,[11] etc.

26.     Typically, it is the first treatment recommended for *any* mild to moderate pain.[12] Therefore, acetaminophen is one of the most commonly used drugs in the world when it comes to pain mitigation, representing an estimated global market value of over $350 million annually.[13] It is even included on the World Health Organization List of Essential Medicines.[14]

---

[9] *Id.*
[10]  https://www.drugs.com/acetaminophen.html (last accessed 11.1.2018).
[11]  https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.1.2018).
[12] *Id.*
[13] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.8.
[14] WHO. World Health Organization Model List of Essential Medicines. August 2017 ed. http://www.who.int/medicines/publications/essentialmedicines/en/2017 (last accessed 11.1.2018).

27.     Given the wide-spread use of acetaminophen, both the *quality* and *value* of acetaminophen products present important public health, consumer safety, and economic concerns.[15]

### WALGREENS SEEKS TO CAPITALIZE OFF OF JOHNSON & JOHNSON'S SUCCESS OF TYLENOL® NAME BRAND ACETAMINOPHIN PRODUCTS BY CREATING GENERICS

28.     Tylenol® is the well-recognized brand name of acetaminophen[16] produced, manufactured, and distributed by Johnson & Johnson.

29.     Johnson & Johnson currently lists 27 Tylenol® products on its Tylenol® website, including: 5 oral suspension products, 6 liquid products, 1 chewable product, 1 tablet product, 1 coated tablet product, 11 caplet products, and 2 gelcap products.[17] All but one of the 27 products contain acetaminophen.[18] Johnson & Johnson has profited and continues to profit greatly from this Tylenol® product line.

30.     Generic brands, like Walgreens, thus seek to mimic the product offerings of Johnson & Johnson selling the generic version of the Tylenol® products for a price less than the name brand equivalent.

31.     Walgreens has done this with several Tylenol® products, including Tylenol® Extra Strength Rapid Release gels, and the generic versions are profitable for Walgreens.

32.     But the profitability on the Class Fast-Release Quick Gels comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

### THE DECEPTIVE MARKETING OF RAPID RELEASE TYLENOL®

33.     Johnson & Johnson introduced Tylenol® Extra Strength Rapid Release Gels in 2005 claiming that these rapid release gelcaps are "specially designed…to allow the release of

---

[15] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.8.

[16] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371     (last     accessed 11.1.2018).

[17] https://www.tylenol.com/products (last accessed 11.15.2018).

[18] *Id*. Tylenol® PM Simply Sleep Nighttime Sleep Aid does not contain acetaminophen.

powerful medicine *even faster than before*."[19] In 2008, Tylenol® PM Rapid Release Gels launched utilizing the same "rapid release" technology and the same or similar advertising.

34.     This claim – that these rapid release gelcaps worked even faster than before – became associated with the regular and PM versions of Tylenol® Extra Strength Rapid Release Gels.

35.     In 2009, the rapid release gels were recalled and were not re-released until 2017.[20]

36.     The national return to the market of the rapid release gels represented Tylenol's "biggest product launch in years" and, thus, the marketing campaign "involved triple the investment" that Johnson & Johnson would normally spend, all to encourage consumers to find "fast working pain relief."[21]

37.     "In the first month, [the campaign] reached over 25 million shoppers on their mobile device across five key markets, resulting in both category and Tylenol share growth at Walgreens."[22] Consumers were inundated with the campaign messaging in stores and online.[23]

38.     With its marketing, product labeling, and affirmative representations, Johnson & Johnson sought and continues to seek to further the falsehood: that rapid release Tylenol® actually provides faster relief than other cheaper acetaminophen products.

39.     It did this not only by explicitly making the claim, but also by using buzz words that emphasized the speed, fast-acting nature, and unique laser-drilled holes of the rapid release gelcaps.

40.     For example, Johnson & Johnson advertised the rapid release gelcaps claiming it:

WORKS AT THE
**SPEED OF LIFE**

**Only TYLENOL® Rapid Release Gels**

---

[19]  https://www.tylenol.com/news/about-us (last accessed 11.15.2018).
[20]  https://shoppermarketingmag.com/headache-sufferers-directed-walgreens (last accessed 11.15.2018).
[21] *Id*.
[22] *Id*.
[23] *Id*.

HAVE LASER-DRILLED HOLES. THEY RELEASE MEDICINE FAST FOR FAST PAIN RELIEF[24]

41.     Other marketing statements include, but are not limited to, the following:

(a) "Tylenol® Rapid Release Gels start to dissolve in seconds and effectively relieve pain at rapid speed"[25]

(b) "Rapid release. Rapid relief."[26]

(c) "Only Tylenol® Rapid Release Gels have laser drilled holes. They release medicine fast for fast pain relief. Fast enough to keep up with you, so you can keep up with life."[27]

(d) "Fast Working Pain Relief"[28]

(e) "New Tylenol® Rapid Release Gels. Gelcaps with specially designed holes to release powerful medicine even faster than before."[29]

(f) "When you have pain from a pounding headache and you need relief, trust Tylenol® Rapid Release… Tylenol® Rapid Release Gelcaps dissolve quickly and relieve your headache pain fast."[30]

42.     Johnson & Johnson's marketing campaign has been successful in getting the public to believe that the rapid release gelcaps are faster acting than other Tylenol® products, when in fact they are *slower*.

43.     Consumer reviews and comments indicate that consumers have been deceived and confused by Johnson & Johnson's representations; and some even notice after purchase that

---

[24]https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 11.15.2018).

[25] https://www.youtube.com/watch?v=_bZcPNyYu1o (last accessed 11.15.2018).

[26]https://cargocollective.com/jeremybernstein/The-Feel-Better-Fast-Show (last accessed 11.15.2018).

[27] https://www.youtube.com/watch?v=DzczfGN0NB4 (last accessed 11.15.2018).

[28] https://www.effie.org/case_database/case/SME_2018_E-375-981 (last accessed 11.15.2018).

[29] https://www.youtube.com/watch?v=cKp4xPNTrPY (last accessed 11.15.2018).

[30] https://www.youtube.com/watch?v=LN0GeRuMouk (last accessed 11.15.2018).

Tylenol® Rapid Release Gelcaps do not work faster than regular, non-rapid release, acetaminophen Tylenol® products that are cheaper.[31]

44.  Despite the fact that the "rapid release" gels are not rapid release and do not work faster than other, traditional acetaminophen products, Johnson & Johnson sells its rapid release gelcap products at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

### WALGREENS' FALSE, MISLEADING, UNFAIR AND DECEPTIVE MARKETING AND LABELING OF THE CLASS FAST-RELEASE QUICK GELS

45.  Other companies followed Johnson & Johnson's labeling, marketing, advertising, and pricing lead and now, in general, acetaminophen products labeled, advertised, or marketed as "rapid release" or "fast-release" are sold on average at a price 23% higher than those acetaminophen products not making these rapid or fast-release representations.[32]

46.  Walgreens is one of the companies that followed Johnson & Johnson's lead.

47.  Walgreens sells its Class Fast-Release Quick Gels at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "fast-release."

48.  Walgreens currently lists 15 Class Fast-Release Quick Gel products, and/or products subject to the 2018 study demonstrating they are actually slower than traditional, cheaper acetaminophen products, on its website, including: Well at Walgreens Extra Strength Pain

---

[31]  *See e.g.,* http://www.paininthehead.org/2006/04/13/rapid-release-does-not-equal-rapid-relief/comment-page-1/ (last accessed 11.15.2018); https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews (last accessed 11.15.2018);https://www.tylenol.com/products/tylenol-rapid-release-gels (last accessed 11.15.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=1 (last accessed 11.15.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=2 (last accessed 11.15.2018); https://www.reviewstream.com/reviews/?p=46385 (last accessed 11.15.2018); https://prawntail.com/do-tylenol-rapid-release-gelcaps-really-work-faster-than-regular-tylenol/ (last accessed 11.15.2018).

[32] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.8.

Reliever Fast-Release Quick Gel™ in quantities of 24, 50, 100, 150, 225, and 375 gelcaps[33]; Well at Walgreens Extra Strength Pain Reliever PM Fast-Release Quick Gel™ in a quantities of 20, 80, 125 and 375 gelcaps[34]; Well at Walgreens Daytime Non-Drowsy Sinus Congestion & Pain Acetaminophen Fast-Release Quick Gels™ in a quantity of 24 gelcaps[35]; Well at Walgreens Tension Headache Relief Acetaminophen Quick Gels™ in a quantity of 80 gelcaps[36]; and, Well at Walgreens Extra Strength Headache Relief Acetaminophen Quick Gels™ in quantities of 20, 80, 120 gelcaps.[37]

49.     Not all caplets and tablets are offered in the same quantities as the Class Fast-Release Quick Gels. However, a comparison of the prices of the Class Fast-Release Quick Gels to the equivalent caplets and tablets in the same counts demonstrates that Walgreens does charge more for the Class Fast-Release Quick Gels than their equivalent non-fast-release acetaminophen products.

50.     Currently at Walgreens, a regularly priced 50 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $5.99,[38] while a regularly priced 50 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $4.29.[39] There is a $1.70 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

---

[33]     https://www.walgreens.com/search/results.jsp?Ntt=walgreens%20pain%20reliever     (last accessed 11.15.18).

[34] *Id.*

[35]     https://www.walgreens.com/store/c/walgreens-sinus-congestion-%26-pain-reliever-gelcaps/ID=prod5816034-product (last accessed 11.15.18).

[36]     https://www.walgreens.com/store/c/walgreens-tension-headache-relief-gelcaps/ID=prod5464916-product (last accessed 11.15.19).

[37]https://www.walgreens.com/search/results.jsp?Ntt=walgreens%20extra%20strength%20headache%20relieve&fromBack=true (last accessed 11.15.19).

[38] https://www.walgreens.com/store/c/walgreens-pain-reliever-gelcaps/ID=prod6153221-product (last accessed 11.15.2018).

[39] https://www.walgreens.com/store/c/walgreens-pain-reliever-caplets/ID=prod6153231-product (last accessed 11.15.2018).

51.     A regularly priced 100 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $7.99,[40] while a regularly priced 100 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $6.99.[41] There is a $1 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

52.     A regularly priced 150 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $10.99,[42] while a regularly priced 150 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $9.49.[43] There is a $1.50 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

53. A regularly priced 225 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast Release Quick Gels™ costs $14.99,[44] while a regularly priced 225 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $12.99.[45] There is a $2 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

54.     Consumers have been willing to and continue to pay this premium because, as a result of false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Fast-Release Quick Gels work faster than other, cheaper acetaminophen products when in fact, they do not.

55.     As a generic brand, Walgreens prices are still lower than their Tylenol® counterparts because Walgreens did not have the expense of researching, developing, marketing, and promoting the drugs when they were new.

---

[40] https://www.walgreens.com/store/c/walgreens-pain-reliever-gelcaps/ID=prod6153222-product (last accessed 11.15.18).
[41]  https://www.walgreens.com/store/c/walgreens-pain-reliever-tablets/ID=prod6153228-product (last accessed 11.15.18).
[42]              https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-quickgel/ID=prod6153223-product (last accessed 11.15.18).
[43]  https://www.walgreens.com/store/c/walgreens-pain-reliever-caplets/ID=prod6153233-product (last accessed 11.15.18).
[44] https://www.walgreens.com/store/c/walgreens-pain-reliever-quick-gels/ID=prod6153224-product (last accessed 11.15.2018).
[45] https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-caplets/ID=prod6247455-product (last accessed 11.15.2018).

56.     Instead, Walgreens introduces its counter parts to Tylenol® products after the public is familiar with the Tylenol® product.

57.     In the case of the Class Fast-Release Quick Gels, Walgreens relied on Johnson & Johnson's massive marketing campaign and the success of its rapid release products before entering the market.

58.     Then Walgreens produced the Class Fast-Release Quick Gels to look the same as or similar to the Tylenol® rapid release products.

59.     For the regular, non-PM, product, Walgreens gelcaps are approximately the same size and shape as the Tylenol® product and they utilize the same distinct color pattern – red on one end, blue on the other end, and a bit of white in the middle.



46                                              47

---

46                      https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-gelcaps/ID=prod6153225-product (last accessed 11.15.18).
47      https://adexchanger.com/advertiser/tylenol-feeling-good-mobile-strategy/ (last accessed 11.15.2018).

60.    The same is true for the PM product, Walgreens gelcaps are approximately the same size and shape as the Tylenol® product and they utilize the same distinct color pattern – darker blue on one end, a lighter blue on the other end, and a bit of white in the middle.



48



49

61.    Consumers were already accustomed to the look of the Tylenol® rapid release products and familiar with the claims that they were fast-acting.

62.    Walgreens did nothing to correct the thinking that "fast-release" and "rapid release" gelcaps worked faster than other, cheaper acetaminophen products.

63.    Instead, Walgreens capitalized on that thinking and sought to further consumer deceit with its own false, misleading, unfair, and/or deceptive labeling and marketing.

64.    For example, on the packaging for the Class Fast-Release Quick Gels, Walgreens associates its products with the Tylenol® products.[50]

---

[48]    https://www.walgreens.com/store/c/walgreens-pain-reliever-pm-gelcaps/ID=prod6191254-product (last accessed 11.15.18).

[49]    https://www.amazon.com/Tylenol-Reliever-Nighttime-Strength-80-count/dp/B000XYIJP6 (last accessed 11.15.2018).

[50]    https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-gelcaps/ID=prod6153225-product (last accessed 11.15.18).

65.     Consumers try the Walgreens Class Fast-Release Quick Gels because they are labeled "fast-release," that is comparable to, but cheaper than, the Tylenol® rapid release products.

## THE SCIENCE BEHIND RAPID RELEASE PRODUCTS DEMONSTRATES THE LABELING AND MARKETING OF THE CLASS FAST-RELEASE QUICK GELS ARE FALSE, MISLEADING, UNFAIR, AND/OR DECEPTIVE

66.     Despite what Walgreens represents to the public about the Class Fast-Release Quick Gels, they do not work faster than other, cheaper Walgreens acetaminophen products.

67.     A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Walgreens Fast-Release Quick Gels, revealed that these products not only fail to work faster, they actually work *slower* than their traditional acetaminophen counterparts, such as tablets.[51]

68.     Thus, the science demonstrates that Walgreens' representations and advertising are false, misleading, deceptive, and unfair on their face.

69.     The level of deception and unfairness is elevated given that Walgreens has long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of its acetaminophen products to its fast-release gelcap design.

70.     Walgreens knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[52]

71.     There is no proven significant efficacy difference between Walgreens' Fast-Release Quick Gels™ and its non-fast-release products to warrant Walgreens' representations that the Class Fast-Release Quick Gels work faster than its non-fast-release products.

72.     Walgreens knew or should have known that its representations about the Class Fast-Release Quick Gels were false, misleading, unfair, and/or deceptive. Even though Walgreens capitalizes and relies upon information put in the marketplace by Johnson & Johnson, it is still

---

[51] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.8.
[52] *Id.*

responsible for its representations pertaining to the Class Fast-Release Quick Gels and investigating the truth or falsity of the same before presenting it to the American public.

73.    Walgreens should have had a basis for the representations it made on and in its labeling, packaging, advertising, and other marketing more than Johnson & Johnson did it.

74.    Despite that Walgreens knew or should have known that the Class Fast-Release Quick Gels did not work faster than its other products, Walgreens falsely marketed the Class Fast-Release Quick Gels as comparable to other rapid release or fast-release products, suggesting to consumers that the Class Fast-Release Quick Gels worked faster than its other, cheaper, non-rapid release, non-fast-release, acetaminophen products.

75.    Walgreens' conduct induced and continues to induce unwitting consumers to buy the Class Fast-Release Quick Gels for a premium price – a price that exceeds the actual value of the product.

## PLAINTIFF'S EXPERIENCE

**Plaintiff Erika Brown**

76.    Plaintiff Erika Brown last purchased Walgreens' Extra Strength Pain Reliever Fast-Release Quick Gels, 375 count on or about July 1, 2018 at Walgreens in Tinley Park, Cook County, Illinois at a premium price over the brand's acetaminophen tablet products.

77.     Pictures of Plaintiff Brown's recent Class Fast-Acting Gels purchase appear below:

  

78.     Plaintiff Brown sought an acetaminophen product since she suffers from back pain stemming from a medical procedure, and occasional headaches.

79.     She purchased the Class Fast-Release Quick Gels consistently for about one year, but stopped purchasing them in July 2018 as she felt the medication was no longer effective and because she did not notice that the medication worked any faster for her than traditional, cheaper Walgreens acetaminophen products, like the tablets.

80.     She purchased the Class Fast-Release Quick Gels over other Walgreens brand and other acetaminophen products solely because they were advertised and labeled as "fast-release" and because she wanted to get rid of her pain as fast as possible.

81.     Walgreens' marketing (labeling and advertising) misled Plaintiff Brown to believe that the Class Fast-Release Quick Gels she purchased would provide faster relief than other cheaper Walgreens acetaminophen products.

82.     Had Plaintiff Brown known that the Class Fast-Release Quick Gels did not act any faster than traditional, cheaper Walgreens products, she would not have been willing to pay the premium that she did for the Class Fast-Release Quick Gels. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

83.     The cost of the Class Fast-Release Quick Gels exceeded the value of the product and Plaintiff Brown did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

84.     Walgreens' conduct violates the law. Walgreens violated consumer protection laws, breached warranties, and unjustly enriched itself to the detriment of consumers. Walgreens' conduct is ongoing and is the basis for Plaintiff's class action allegations.

85.     Plaintiff represents a proposed class of hundreds of thousands of consumers who purchased and used the Class Fast-Release Quick Gels manufactured and distributed by Walgreens and sold under the Walgreens brand name.

86.     Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against Walgreens, on their own and on behalf of the Illinois Class defined below. Plaintiff proposes the Illinois Class in the interest of judicial economy and efficiency.

**Illinois Class:**
During the fullest period allowed by law, all persons who purchased the Class Fast-Release Quick Gels in the State of Illinois.

87.     At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify these class definitions.

88.     "Class Fast-Release Quick Gels" includes Walgreens Pain Reliever Acetaminophen Fast-Release Quick Gels, Walgreens Pain Reliever Acetaminophen PM Fast-Release Quick Gels, and any Walgreens acetaminophen products labeled and/or marketed as "fast-release" or "rapid release."

89.     Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Walgreens and any entity in which it has a controlling interest or which has a controlling interest in it; (c) the officers and directors of Walgreens; (e) Walgreens' legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

90.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Illinois Class.

91.     **Numerosity**: While the exact number of class members cannot yet be determined, the Class consists at a minimum of hundreds of people dispersed throughout the State of Illinois, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Walgreens.

92.     **Commonality**: Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

a.      Whether Walgreens knew, or reasonably should have known, that the Class Fast-Release Quick Gels it placed into the stream of commerce would not function as advertised;

b.      Whether the advertised "fast-release" and "rapid release" features of the Class Fast-Release Quick Gels is a material fact that reasonable purchasers would have considered in deciding whether to purchase the Class Fast-Release Quick Gels;

c.      Whether the Class Fast-Release Quick Gels are of the quality and character Walgreens promised to consumers;

d.      Whether Walgreens breached implied warranties relating to the Class Fast-Release Quick Gels;

e.      Whether Walgreens mispresented the characteristics, qualities, and capabilities of the Class Fast-Release Quick Gels;

f.      Whether Walgreens made fraudulent, false, deceptive, misleading and/or otherwise unfair statements in connection with the sale of the Class Fast-Release Quick Gels on its labeling, in its advertising, and on its website;

g.      Whether Walgreens engaged in unfair and deceptive trade practices pertaining to the Class Fast-Release Quick Gels;

h.      Whether Walgreens was unjustly enriched as a result of selling the Class Fast-Release Quick Gels;

i.     Whether Walgreens should be ordered to disgorge all or part of the profits it received from the sale of the Class Fast-Release Quick Gels;

j.     Whether Plaintiff and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

k.     Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction and requiring that Walgreens engage in a corrective notice campaign and/or a recall of the Class Fast-Release Quick Gels to address misrepresentations and misleading statements on the packaging; and

l.     Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

93.    **Typicality**:  Plaintiff has substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff and all Class Members purchased the Class Fast-Release Quick Gels. All of the claims of Plaintiff and Class Members arise out of Walgreens' false, misleading, deceptive, and unfair conduct. Common to Plaintiff and Class Members' claims is Walgreens' conduct in marketing, advertising, warranting, and/or selling the Class Fast-Release Quick Gels and Plaintiff and Class Members' purchase of the Class Fast-Release Quick Gels.

94.    **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

95.    The elements of Rule 23(b)(2) are met. Walgreens will continue to commit the violations alleged, and the Class Members and the general public will be subject to and continue to suffer from the same or substantially similar deceitful marketing. Walgreens has acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

96.     The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Walgreens, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff. Plaintiff's counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

97.     Any applicable statutes of limitations have been tolled by Walgreens' knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

98.     Alternatively, the facts alleged herein give rise to estoppel. Walgreens was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Fast-Release Quick Gels. At all relevant times and continuing to this day, Walgreens misrepresented the true character, quality, and nature of the Class Fast-Release Quick Gels. Representations which it knew or should have known were false, misleading, unfair, and/or deceptive. Plaintiff and Class Members reasonably relied on Walgreens' misrepresentations of material facts. Based on the allegations contained herein, Walgreens is estopped from prevailing on any statute of limitations defense in this action.

99.     Additionally, Walgreens is estopped from raising any defense of laches due to its own unclean hands.

<u>CLAIMS FOR RELIEF</u>

<u>COUNT I</u>

<u>VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT, 815 ILCS § 505/1 *et seq.*</u>

**(Plaintiff individually and on behalf of Illinois Class)**

100.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as
though fully set forth herein.

101.    Plainitff and Class Members are "persons" and "consumers" within the meaning
of ICLS 505/1(c) and (e).

102.    Walgreens engaged in "trade" or "commerce" within the meaning of ILCS
505/1(f).

103.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits the
use of unfair and deceptive business practices in the conduct of trade or commerce.

104.    Specifically, Section 2 of the Act, provides:

Unfair methods of competition and unfair or deceptive acts or practices, including
but not limited to the use or employment of any deception, fraud, false pretense,
false promise, misrepresentation or the concealment, suppression or omission of
any material fact, with intent that others rely upon the concealment, suppression or
omission of such material fact, or the use of employment of any practice described
in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5,
1996, in the conduct or trade or commerce are hereby declared unlawful whether
any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

105.    Section 2 of the "Uniform Deceptive Practices Act" defines deceptive trade
practices as, among other things, representation that goods have "...characteristics, ingredients,
uses, [or] benefits...that they do not have...," or "any other conduct which similarly creates a
likelihood of confusion or misunderstanding." 815 ILCS 510/2. In order to prove deceptive
practices, a party need not prove actual confusion or misunderstanding. *Id.*

106.    Based on the conduct, statements and omissions described above, Walgreens
engaged in unfair methods of competition and unfair or deceptive acts or practices related to the

marketing, packaging and sale of the Class Fast-Release Quick Gels. Walgreens knowingly and intentionally misled consumers into believing that the Class Fast-Release Quick Gels fulfilled its "fast-release" and "rapid release" promise, when in fact the gelcaps worked slower than other non-fast-release acetaminophen Walgreens products.

107.    Walgreens' acts and practices have deceived Plaintiff and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Fast-Release Quick Gels to Plaintiff and the Class Members, Walgreens violated the Illinois Consumer Fraud and Deceptive Business Practices Act, and caused injuries to Plaintiff and Class Members. The misrepresentations and omissions by Walgreens pertained to information that was material to Plaintiff's and Class Members' purchase decisions, as it would be material to all reasonable consumers.

108.    As a result of Walgreens' unlawful acts, Plaintiff and Class Members sustained injuries and are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Illinois law, including but not limited to 815 ILCS 505/10a(a) and (c).

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER UCC §2-314
### (Plaintiff individually and on behalf of the Illinois Class)

109.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

110.    The implied warranty of merchantability included with the sale of each Class Fast-Release Quick Gels means that Walgreens warranted that each Class Fast-Release Quick Gel, *inter alia*:

(a)    would pass without objection in trade under the description;

(b)    was fit for the ordinary purposes for which the Class Fast-Release Quick Gels would be used;

(c)    was adequately contained, packaged, and labeled; and

(d)    conformed to the promises or affirmations of fact made about the Class Fast-Release Quick Gels.

111.    At a minimum, the Class Fast-Release Quick Gels do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Fast-Release Quick Gels do not provide rapid release or provide rapid relief faster than cheaper, non-fast-release acetaminophen Walgreens products.

112.    The Class Fast-Release Quick Gels are not adequately labeled.

113.    The labeling, packaging, advertising, and marketing pertaining to the Class Fast-Release Quick Gels are false, misleading, and/or deceptive.

114.    These misrepresentations by Walgreens have deprived Plaintiff and Class Members of the benefit of their bargains.

115.    The Class Fast-Release Quick Gels are worth less than what Plaintiff and Class Members paid for them.

116.    As a direct and proximate result of Walgreens' conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

117.    At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Fast-Release Quick Gels.

118.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Fast-Release Quick Gels.

119.    Plaintiff is also entitled to all incidental and consequential damages resulting from Walgreens' conduct, as well as reasonable attorneys' fees and costs.

## COUNT III

## BREACH OF EXPRESS WARRANTY UNDER UCC §2-313

### (Plaintiff individually and on behalf of the Illinois Class)

120.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

121.    As described herein, Walgreens made statements, promises, affirmations about the Class Fast-Release Quick Gels as to the nature, quality, and capability of the goods that became

part of the bargain between the parties to create an express warranty that the Class Fast-Release Quick Gels would in fact conform to those representations.

122.     Walgreens breached its express warranty when its Class Fast-Release Quick Gels did not conform to the representations and descriptions Walgreens made to consumers.

123.     Plaintiff and Class Members reasonably relied on Walgreens' misrepresentations.

124.     The misrepresentations by Walgreens have deprived Plaintiff and Class Members of the benefit of their bargains.

125.     The Class Fast-Release Quick Gels are worth less than what Plaintiff and Class Members paid for them.

126.     As a direct and proximate result of Walgreens' conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

127.     At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Fast-Release Quick Gels.

128.     Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Fast-Release Quick Gels.

129.     Plaintiff is also entitled to all incidental and consequential damages resulting from Walgreens' conduct, as well as reasonable attorneys' fees and costs.

130.     Plaintiff and Class Members have provided or will provide Walgreens notice of the alleged breach within a reasonable time after discovering the breach.

## COUNT IV
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")
### 15 U.S.C. § 2301 *et seq*.

### (Plaintiff individually and on behalf of the Illinois Class)

131.     Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

132.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

133.    Walgreens' is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301 (4)-(5).

134.    Class Fast-Release Quick Gels are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

135.    As detailed above, Walgreens breached its warranty obligations by, at least, failing to provide a product that conformed to the promises and affirmations Walgreens made about the Class Fast-Release Quick Gels.

136.    Walgreens breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

137.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

138.    Walgreens has been afforded reasonable opportunity to cure its breaches of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members will send notice to Walgreens' principal place of business to provide it with reasonable opportunity to correct its business practice and cure its breaches of warranties under the MMWA.

139.    In addition, resorting to any sort of informal dispute settlement procedure or affording Walgreens another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Walgreens has repeatedly mispresented the true quality and nature of the Class Fast-Release Quick Gels and has indicated no desire to participate in such a process at this time.  Any requirement under the MMWA or otherwise that Plaintiff submits to any informal dispute settlement procedure or otherwise afford Walgreens a reasonable opportunity to cure its breach of warranty is excused and/or has been satisfied.

140. As a direct and proximate result of Walgreens' warranty breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Walgreens' conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT V
## UNJUST ENRICHMENT
### (Plaintiff individually and on behalf of the Illinois Class)

141. Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

142. As described above, Walgreens sold the Class Fast-Release Quick Gels to Plaintiff and Class Members by making false, misleading, and/or deceptive representations about the products' speed and capabilities as compared to Walgreens' cheaper, non-fast-release acetaminophen products.

143. Walgreens unjustly charged and continues to charge Plaintiff and Class Members a premium to purchase the Class Fast-Release Quick Gels over the non-fast-release acetaminophen Walgreens products.

144. As a result of its false, misleading, unfair, and/or deceptive practices and omission about the true nature and quality of Class Fast-Release Quick Gels, Walgreens obtained monies that rightfully belong to Plaintiff and Class Members.

145. Walgreens appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the true quality and nature of the Class Fast-Release Quick Gels, paid a higher price for them than what they were worth.

146. Walgreens also received monies for those Class Fast-Release Quick Gels that Plaintiff and Class Members would not have otherwise purchased had they known the true nature and quality of the products.

147. Walgreens' retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

148.    Plaintiff and Class Members seek restitution from Walgreens and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Walgreens from its wrongful conduct and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

<u>**COUNT VI**</u>
<u>**DECLARATORY RELIEF**</u>
**(Plaintiff individually and on behalf of the Illinois Class)**

149.    Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

150.    There is a controversy between Walgreens and Plaintiff and the other Class Members concerning the true nature, quality, and capability of the Class Fast-Release Quick Gels and the false, misleading, unfair, and/or deceptive representations that Walgreens made about the same.

151.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

152.    Accordingly, Plaintiff and Class Members seek a declaration that the Class Fast-Release Quick Gels do not release, provide relief, or otherwise work faster than other, cheaper non-fast-release acetaminophen Walgreens products.

153.    Additionally, Plaintiff and Class Members seek a declaration that as a result of Walgreens' false, misleading, unfair, and/or deceptive representations, consumers and Class Members did not and do not receive the benefit of their bargain.

154.    Walgreens, on information and belief, designed, manufactured, produced, tested, inspected, marketed, advertised, labeled, packaged, distributed, and sold the Class Fast-Release Quick Gels. Walgreens continues to do so while using false, misleading, unfair, and/or deceptive representations to ensure sales to consumers.

155.    Based upon information and belief, Walgreens has taken no corrective action concerning the false, misleading, unfair, and/or deceptive representations described herein, and has not issued any recalls, warnings, or notices concerning the true nature, quality, and capability of the Class Fast-Release Quick Gels.

156.    Plaintiff and Class Members have suffered damages or injuries due to Walgreens' conduct described herein.

157.    Walgreens should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the Class Fast-Release Quick Gels to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Fast-Release Quick Gels; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment awarding the following relief:

A.    An order certifying the proposed Illinois Class;

B.    An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.    An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.    An order requiring Walgreens to adequately represent the true nature, quality, and capability of the Class Fast-Release Quick Gels;

E.    An order (a) issuing a nationwide recall of the Class Fast-Release Quick Gels to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Fast-Release Quick Gels; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F.    An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G.    An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed by law;

H.   An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.   An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable under the law.

DATED:  November 15, 2018         Respectfully submitted,

*/s/  Trent B. Miracle*
Trent B. Miracle
**SIMMONS HANLY CONROY LLC**
One Court Street
Alton, IL 62002
Telephone: (618) 259-2222
Facsimile:  (618) 259-2222
tmiracle@simmonsfirm.com

Mitchell M. Breit (*pro hac vice* forthcoming)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
mbreit@simmonsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/  Trent B. Miracle*